WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sheramy Scott, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Credit Union West,<br><br>    Defendant. | No. CV-25-08024-PCT-DLR<br><br>**ORDER** |

Before the Court is Defendant Credit Union West's Motion to Dismiss and Compel Arbitration. (Doc. 7.) The motion is fully briefed. (Docs. 12, 16, 19, 20, 21.) For the following reasons, Defendant's motion is granted.

**I.    Background**

Plaintiffs Brian Scott and Sheramy Scott opened joint checking and savings accounts with Defendant in 2021. (Doc. 1 at ¶ 1; Doc. 12-1 at 1.) Plaintiffs claim that their accounts were compromised on August 13, 2024, resulting in $32,370.00 in losses. (Doc 1 at ¶¶ 2–3.) Plaintiffs thereafter filed suit against Defendant, alleging violations of the federal Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, and a claim for common law negligence for failing to take reasonable steps to protect Plaintiffs' accounts from fraudulent activity. (*Id.* at ¶¶ 5, 47.) Defendant has moved to compel arbitration pursuant to an arbitration clause in Defendant's consumer Membership Account Agreement & Disclosures ("Membership Agreement"). (Doc. 7-2 at 13.)

## II. Legal Standard

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" or as otherwise provided under the statute. 9 U.S.C. § 2. Under the FAA, the Court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both questions are answered in the affirmative, the Court must compel arbitration. *Id.*

"[T]he party seeking to compel arbitration must prove the existence of a valid agreement by a preponderance of the evidence." *See Wilson v. Huuuge, Inc.,* 944 F.3d 1212, 1219 (9th Cir. 2019). In evaluating whether a valid arbitration agreement exists, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.,* 1 F.4th 667, 670 (9th Cir. 2021). Rule 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute of fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when it is relevant to the outcome of the suit. *See id.*

"Where a contract contains an arbitration clause, courts apply a presumption of arbitrability as to particular grievances, and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 Fed. App'x. 740, 742 (9th Cir. 2012).

## III. Discussion

### A. Valid Arbitration Agreement

The Court must determine (1) whether Plaintiffs are bound by any contractual agreement with Defendant, (2) whether any such agreement contains an arbitration clause, and (3) if so, whether the arbitration clause in the record accurately reflects the clause

- 2 -

Plaintiffs agreed to. Ultimately, there is no genuine dispute of material fact as to whether Plaintiffs entered into a valid agreement to arbitrate disputes with Defendant pursuant to the Membership Agreement in Doc. 7-2.

### 1. Plaintiffs are bound by the Membership Agreement.

"For an enforceable contract to exist, there must be an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019) (quotation and citation omitted). Plaintiffs argue that there is insufficient evidence that they accepted and assented to the Membership Agreement. (Doc. 19 at 5.) The Court disagrees. Defendant presents the following exhibits supporting its position: the Membership Agreement, revised as of December 14, 2021 (Doc. 7-2 at 13, 18); application histories showing that Plaintiffs opened accounts and agreed to the "Terms and Conditions and E-Sign Agreement" on August 26, 2021 and December 6, 2021 (Doc. 16-3 at 2; Doc. 16-6 at 2); and copies of Plaintiffs' applications for both accounts with signatures indicating that Plaintiffs agreed to the "terms and conditions of the Consumer Membership Agreement" (Doc. 16-4 at 2–3; Doc. 16-5 at 2–3). Collectively, these documents establish that Plaintiffs assented to the Membership Agreement when they opened their accounts.

In arguing otherwise, Plaintiffs present declarations swearing that they "do not have any recollection" of receiving the Membership Agreement (Doc. 12-1 at 2; Doc. 12-2 at 2; Doc. 20 at 1; Doc 21 at 1), but their inability to remember receiving the Membership Agreement does not create a genuine dispute of material fact here. In their 2021 account applications, Plaintiffs provided signatures affirming "receipt of" and consent to the Membership Agreement. (Doc. 16-4 at 3; Doc. 16-5 at 3.) Their signatures on the applications are sufficient evidence of their assent to the Membership Agreement. *See Teran v. Citicorp Pers.-to-Pers. Fin. Ctr.*, 706 P.2d 382, 384 (Ariz. Ct. App. 1985) ("[O]ne who signs a written document is bound to know and assent to its provisions in the absence of fraud, misrepresentation, or other wrongful acts by the other party."). What's more, nowhere in their declarations do Plaintiffs *deny* receiving or consenting to the Membership

Agreement. They merely state that they cannot recall one way or the other, which is insufficient to create a genuine dispute. Indeed, many people might not recall receiving a specific standardized consumer agreement several years ago.

Plaintiffs also argue that Defendant has not shown that customers are required to take an affirmative act consenting to the Membership Agreement. (Doc. 19 at 7.) *See Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1176–78 (9th Cir. 2014) (declining to enforce an arbitration clause when consumers were not required to affirmatively acknowledge terms and conditions, and consumers had inadequate notice of the terms). However, Plaintiffs signed applications stating that they consented to the Membership Agreement. (Doc. 16-4 at 2–3; Doc. 16-5 at 2–3.) Plaintiffs do not allege that these signatures are invalid. A signature is an affirmative act of assent.[1] *See, e.g., R & M Oxford Const., Inc. v. Smith,* 836 P.2d 454, 457–58 (Ariz. Ct. App. 1992). Thus, Plaintiffs affirmatively accepted and assented to the Membership Agreement.

Plaintiffs do not allege that the Membership Agreement is otherwise unenforceable or invalid. Therefore, Plaintiffs are bound by the Membership Agreement referenced in their application materials.

### 2. The Membership Agreement contained an arbitration clause when Plaintiffs agreed to it.

Plaintiffs further contend that, even if they entered into an agreement with Defendant, Defendant has not presented sufficient evidence that the agreement contained an arbitration clause. (Doc. 12 at 11.) The Court again disagrees.

It's true that Defendant has not presented a document containing both the arbitration clause and Plaintiffs' signatures. (Doc. 19 at 4–7.) However, Defendant presents substantial

---

[1] Plaintiffs signed the applications, not the Membership Agreement itself. However, a party may be bound by an agreement that is clearly referenced in a document the party signed and easily available to the party—even if that agreement is not attached to the signed document. See *Weatherguard Roofing Co. v. D.R. Ward Const. Co.*, 152 P.3d 1227, 1229 (Ariz. Ct. App. 2007). Plaintiffs' account applications clearly reference the Membership Agreement. Additionally, the Membership Agreement was easily available to Plaintiffs because Plaintiffs' signatures affirmed "receipt of" the Membership Agreement (Doc. 16-4 at 3; Doc. 16-5 at 3), and the Membership Agreement is available on Defendant's website. (Doc. 16 at 3). Therefore, the signatures on Plaintiffs' applications are sufficient to bind Plaintiffs to the Membership Agreement.

evidence that the Membership Agreement contained an arbitration clause in August 2021. This evidence includes: a declaration from Defendant's Director of Enterprise Risk Management, Tricia Blaylock, affirming that Defendant inserted an arbitration clause into the Membership Agreement in July 2021 (Doc. 16-1 at 3); a notice to members indicating that Membership Agreements would contain arbitration clauses effective August 1, 2021 (Doc. 16-2 at 2)[2]; and application histories showing that Plaintiffs opened accounts and agreed to the "Terms and Conditions and E-Sign Agreement" on August 26, 2021 and December 6, 2021 (Doc. 16-3 at 2; Doc. 16-6 at 2). Taken together, Defendant's exhibits—which Plaintiffs have not shown are materially inaccurate—prove that the Membership Agreement contained an arbitration clause when Plaintiffs created their accounts.[3] Plaintiffs are bound by the agreement to arbitrate.

### 3. The arbitration clause in the record is the arbitration clause Plaintiffs assented to.

Finally, Plaintiffs argue that the Membership Agreement attached at Doc. 7-2 was revised as of December 14, 2021, so it is not necessarily the same agreement Plaintiffs entered into when they opened their accounts. (Doc. 12 at 15.) However, Ms. Blaylock's declaration states that the Membership Agreement attached at Doc. 7-2 is the same Membership Agreement that Plaintiffs agreed to when they opened their accounts. (Doc. 16-1 at 4.) Plaintiffs have not set forth facts showing that the agreements they entered when they opened their accounts contained a materially different arbitration clause. Therefore, the Court will apply the arbitration clause in Doc. 7-2.

---

[2] Plaintiffs note that they did not receive this notice because they were not members at the time. (Doc. 19 at 5.) But the import of this evidence merely is to establish that an arbitration clause had been added to the standardized Membership Agreement by the time Plaintiffs created their accounts later that month.

[3] There is a discrepancy in the record regarding whether Plaintiffs opened their accounts on August 26 or 27 and December 6 or 8, respectively. (Doc. 19 at 7, 9.) Because the Court construes the evidence in the light most favorable to Plaintiffs, the Court uses the dates Plaintiffs provided in their declarations. (Doc. 20 at 1; Doc. 21 at 1.) Ultimately, this discrepancy is immaterial because Ms. Blaylock's declaration states that the arbitration agreement was inserted into the Membership Agreement in July 2021, well before any of the disputed dates. (Doc. 16-1 at 3.)

**B. Scope of the Arbitration Agreement**

Plaintiffs do not contest that the arbitration clause in the record encompasses the dispute at issue. The arbitration clause provides, in relevant part:

> [Y]ou agree that any and all Claims that are threatened, made, filed or initiated after the Effective Date (defined below) of this Arbitration and Waiver of Class Action provision ("Arbitration Agreement"), even if the Claims arise out of, affect or relate to conduct that occurred prior to the Effective Date, shall, at the election of either you or us, be resolved by binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its applicable rules and procedures for consumer disputes ("Rules"), whether such Claims are in contract, tort, statute, or otherwise.

(Doc. 7-2 at 13.) This provision applies broadly to "any and all Claims" made against Defendant, which encompasses this dispute. (*Id.*) Furthermore, the Effective Date is 31 days after the arbitration agreement was provided to Plaintiffs. (Doc. 7-2 at 13.) Plaintiffs brought this suit several years after they opened their first account and agreed to the Membership Agreement, well after the Effective Date. (Doc. 20 at 1; Doc. 1 at 1.) Therefore, the arbitration clause applies, and the Court must compel arbitration. *See* 9 U.S.C. § 4.

**IT IS ORDERED** that Defendant's Motion to Dismiss and Compel Arbitration (Doc. 7) is **GRANTED**. The Clerk is directed to administratively close this case, whereupon, by proper motion of the prevailing party at arbitration, it may be reopened or dismissed with prejudice.

Dated this 10th day of September, 2025.

Douglas L. Rayes
Senior United States District Judge